UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMMY SWEET,

                        Plaintiff,

v.                                              6:15-CV-0156
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF PETER M. HOBAICA, LLC                 B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee St.
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.                     JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

       This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 24.)  This case has proceeded in accordance with General

Order 18.

       Currently before the Court, in this Social Security action filed by Tammy Sweet

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 23.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on April 19, 1972. (T. 65.) She completed the ninth grade. (T. 183.) Generally, Plaintiff's alleged disability consists of chronic obstructive pulmonary disease ("COPD"), asthma, bipolar disorder, and a learning disability. (*Id.*) Her alleged disability onset date is August 10, 2010. (T. 65.) She has no work history.

### B.    Procedural History

On March 18, 2011, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 19.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 8, 2013, Plaintiff appeared before the ALJ, Gregory M. Hamel. (T. 36-64.) On June 3, 2013, ALJ Hamel issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-34.) On December 19, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 21-30.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 18, 2011. (T. 21.) Second, the ALJ found that

Plaintiff had the severe impairments of COPD, generalized anxiety disorder, bipolar disorder, and a learning disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 21-24.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, except she could not work in an occupation with exposure to high concentrations of dust, fumes, gases, and other pulmonary irritants; she could do routine and repetitive tasks only; and she could not do tasks requiring more than occasional public contact or occasional interaction with coworkers. (T. 24.)[1] Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 28.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in failing to give controlling weight to the opinion of treating psychiatrist Bahram Omidian, M.D. that Plaintiff met Listing 12.04 and 12.06(A) and (C). (Dkt. No. 13 at 10-19 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred in failing to consider the RFC findings in Dr. Omidian's "Mental Source Statement" and the ALJ erred in failing to properly assess Plaintiff's mental RFC as required by SSR 96-8p and SSR 85-15. (*Id.* at 199-22.) Third, Plaintiff argues the ALJ failed to consider whether Plaintiff functionally equaled Listing 12.04, 12.06, and 12.08. (*Id.* at 22-23.) Fourth, Plaintiff argues the ALJ erred in his credibility analysis

---

[1]    Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

and determination. (*Id.* at 23-24.) Fifth, and lastly, Plaintiff argues the ALJ erred in relying on the vocational expert ("VE") testimony because he failed to properly analyze Plaintiff's RFC and credibility. (*Id.* at 24-25.)

### B.   Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues the ALJ's step three determination was supported by substantial evidence. (Dkt. No. 23 at 5-13 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated and weighed the opinion evidence in the record. (*Id.* at 13-15.) Third, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 15-17.) Fourth, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence. (*Id.* at 17-18.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.      **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

416.920.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be discussed out of order and in a

consolidated manner.

### A.    The ALJ's Step Three Determination

Plaintiff essentially argues that the ALJ erred because he: (1) failed to recognize

that she meets or equals Listings 12.02, 12.04, 12.06, and 12.08 and (2) he failed to

afford proper weight to the medical opinion of Dr. Omidian that Plaintiff met a Listing.

(Dkt. No. 13 at 10-22 [Pl.'s Mem. of Law].)  Defendant counters that substantial

evidence supported the ALJ's step three determination and the weight afforded to the

medical evidence in the record.  (Dkt. No. 23 at 5-15 [Def.'s Mem. of Law].)  Having

reviewed the ALJ's determination and the record, it is recommended that the ALJ's step three determination be upheld because the determination was supported by substantial evidence in the record.

In general, if an ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1 ("the Listings").  20 C.F.R. § 416.920(a)(4)(iii)(d).  The impairments listed in the Listings are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* at § 416.925(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in the Listings, and satisfies the duration requirement in 20 C.F.R. § 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* at § 416.920(d).

To match an impairment listed in the Listings, a plaintiff's impairment "must meet all of the specified medical criteria" of a Listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  Although an ALJ may award benefits at step three, a plaintiff who fails to prove her impairment matches or equals one listed in the Listings is not denied benefits, but rather, the ALJ must proceed to step four.  *See id.* at § 416.920(e).

To satisfy the criteria of Listings 12.02, 12.04, 12.06, or 12.08, Plaintiff must meet the requirements of paragraph A and either paragraph B or paragraph C of the Listing[2]. Paragraph B of each of these four Listings requires that Plaintiff demonstrate that her mental impairment resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Secs. 12.02(B), 12.04(B), 12.06(B), 12.08(B).

Or, in the alternative, paragraph C of Listings 12.02 and 12.04 requires a medically documented chronic organic mental disorder (12.02) or chronic affective disorder (12.04) of at least 2 years' duration, with at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living environment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Secs. 12.02(C), 12.04(C). Paragraph C of Listing 12.06 requires an anxiety-related disorder "[r]esulting in complete inability to function independently outside the area of one's home." *Id.* at Sec. 12.06(C).

---

[2] Listing 12.08 does not have paragraph C criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.08.

Here, the ALJ determined that Plaintiff did not meet or medically equal the criteria of Listings 12.02, 12.05 or 12.06. (T. 22.)[3] Regarding paragraph B criteria, the ALJ concluded that Plaintiff had "mild restriction" in her activities of daily living; "moderate difficulties" in social functioning; and "moderate difficulties" in concentration, persistence or pace. (*Id.*) The ALJ also concluded that Plaintiff had no episodes of decompensation for an extended duration. (*Id.*)

The ALJ considered the paragraph C criteria of Listing 12.02 and 12.06 and determined that the evidence in the record failed to establish presence of the necessary criteria. (T. 22.) Specifically, the ALJ concluded that Plaintiff did not meet the paragraph C requirements of Listing 12.02 because she had no episodes of decompensation and her activities of daily living "belie a finding that she would meet this listing." (T. 23.) The ALJ concluded that Plaintiff did not meet the paragraph C requirements of Listing of 12.06 because there was no documentation of an inability to function independently outside her own home. (*Id.*)

Plaintiff does not contend that the ALJ erred in his determination that the medical evidence failed to establish the paragraph B criteria or episodes of decompensation. (Dkt. No. 13 at 10 [Pl.'s Mem. of Law].) Plaintiff essentially argues the ALJ failed to provide controlling weight to Dr. Omidian's opinion that Plaintiff met the paragraph C criteria of Listing 12.02, 12.04, and 12.06.

---

[3] The ALJ did not specifically address Listing 12.04 at step three of his decision. However, the paragraph B criteria and the paragraph C criteria of 12.04 mirror the criteria of Listing 12.02 and 12.06. Plaintiff does not argue the ALJ erred in his step three conclusion that Plaintiff does not meet Listing 12.05. Further, although not specifically discussed by the ALJ, Plaintiff met the requirements of paragraph A of the Listings. The ALJ would not have discussed paragraph B and C criteria had he not concluded Plaintiff met paragraph A criteria.

Dr. Omidian opined in a "Mental Impairment Questionnaire" that Plaintiff met the paragraph C criteria of the various Listings. (T. 378-381.) Dr. Omidian completed a form in which he checked a box for the statement that Plaintiff had a "[m]edically documented history of a chronic organic mental, schizophrenic, etc., or affective disorder of at least 2 years duration that has caused more than a minimal limitations of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support." (T. 380-381.) Dr. Omidian then checked off the box for the statement that Plaintiff had "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (T. 381.) Dr. Omidian also checked the box for the statement that Plaintiff had a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need to such an arrangement." (*Id.*) Dr. Omidian also checked the box for the statement that Plaintiff had "[a]n anxiety related disorder and complete inability to function independently outside the area of one's home." (*Id.*)

Although Dr. Omidian's medical source statement indicated that Plaintiff met the paragraph C criteria of the Listings, the ALJ's decision not to grant Dr. Omidian opinion controlling weight was supported by substantial evidence in the record. The ALJ's determination that Plaintiff's mental impairments did not meet the criteria for disability under the Listings was also supported by substantial evidence in the record.

Foremost, although a treating source may opine that a plaintiff meets a Listing, that determination is not binding on the ALJ. The final responsibility of determining whether or not an impairment meets or equals a Listing is reserved to the

Commissioner. 20 C.F.R. § 416.927(d)(2). The ALJ afforded Dr. Omidian's opinion,

that Plaintiff met the requirements of Listing 12.04(C) and 12.06(C), "limited weight"

reasoning that the opinions were inconsistent with Dr. Omidian's own treatment

notations and other mental status examination findings in the record. (T. 27.) The

treating physician rule, and the ALJ's treatment of Dr. Omidian's opinion, is discussed in

greater detail herein. For the purposes of the ALJ's step three analysis and treatment of

Dr. Omidian's opinion that Plaintiff met a Listing, substantial evidence supported the

ALJ's determination to afford Dr. Omidian's opinion "limited weight."

It is well established that a treating physician's opinion as to the nature and

severity of an impairment is given controlling weight. *Greek v. Colvin*, 802 F.3d 370, 375

(2d Cir. 2015) (per curiam). But a treating physician's opinion is not entitled to

controlling weight when it is not supported by medically acceptable, clinical, and

laboratory diagnostic techniques or is inconsistent with other evidence in the record.

*Greek,* 802 F.3d at 375.

Regarding Listing 12.02(C)(2) and 12.04(C)(2), the Listings require "a residual

disease process that resulted in such a marginal adjustment that even a minimal

increase in mental demands or change in the environment would be predicted to cause

the individual to decompensate[4]." Although Dr. Omidian opined Plaintiff met this

---

[4]        The regulations also define episodes of decompensation as:

exacerbations or temporary increases in symptoms or signs accompanied by a loss of a
adaptive functioning, as manifested by difficulties in performing activities of daily living,
maintaining social relationships, or maintaining concentration, persistence, or pace.
Episodes of decompensation may be demonstrated by an exacerbation of symptoms or
signs that would ordinarily require increased treatment or a less stressful situation (or a
combination of the two). Episodes of decompensation may be inferred from medical
records showing significant alteration in medication; or documentation of the need for a
more structured psychological support system (e.g., hospitalizations, placement in a

requirement, the ALJ properly concluded that Plaintiff's testimony regarding her daily activities and responsibilities failed to support this criteria. (T. 23.) Plaintiff testified that she could care for her personal needs, could care for her teenage son, care for her pets, lived with her fiancé, visited with her mother and daughter, went out in public, was able to cook, was able to clean, and went to medical appointments. (T. 41, 43-44, 171-173.) The record indicated that Plaintiff visited with friends. (T. 262.) Plaintiff also stated that she did not have any problems getting along with people in authority. (T. 177.)

The record was devoid of evidence of episodes of decompensation. Although the record contains emergency room visitations due to complaints of anxiety, it was noted that Plaintiff was intoxicated at the time. (T. 242, 261.) The medical records did not indicate that Plaintiff suffered from episodes of decompensation such that required "significant alteration" in her medication or documentation of the need for a more structured psychological support system. In fact, Dr. Omidian's notations from August 2012 indicated that he stressed the importance of cutting down on, and eventually going off, medication. (T. 367.) Dr. Omidian's notations from February 2013, also indicated that Plaintiff's dosage of Ativan was reduced during the previous visit "which [Plaintiff] has not had any problems with." (T. 361.)

Plaintiff argues that it was "simply not true" that her activities of daily living "belie" a finding that she meets paragraph C criteria. (Dkt. No. 13 at 17 [Pl.'s Mem. of Law].)

halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. Pt. 404, Subpt. 1, App. 1 § 12.00(C)(4); *see also* Social Security Administration Program Operations Manual System ("POMS") § DI 34001.032(C)(4).

Plaintiff argues that her daily activities were not "easily conducted in [a] normal fashion." (*Id.* at 18.)  Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

The ALJ did not conclude that Plaintiff conducted activities "easily" and in a "normal fashion" as Plaintiff contends.  (Dkt. No. 13 at 17 [Pl.'s  Mem. of Law].)  The ALJ concluded that the record failed to provide episodes of decompensation and further, her self-reported activities did not support a conclusion that a "minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate" as required under the Listings.  (T. 23.)

The ALJ's determination that Plaintiff's mental impairments did not meet or equal the Listings at 12.02(C)(3) and 12.04(C)(3) which requires a "highly structured and supportive setting" as "placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure" was supported by substantial evidence.  20 C.F.R. Pt. 404, Subpt. P, App., 1 Sec. 12.00(F).  Such a setting may be

found in a home, but the setting must provide a "similar structure" to placement in one of the facilities noted. *Id.* Again, the record is devoid of any evidence to support the conclusion that Plaintiff's home constituted a structured setting.

The ALJ properly concluded that Dr. Omidian's notations did not support his opinion that Plaintiff could not function outside a supportive setting or her home. To be sure, Dr. Omidian noted Plaintiff suffered from panic disorder with agoraphobia on February 4, 2013 (T. 365); however, the majority of Dr. Omidian's notes state that Plaintiff suffered from panic disorder without agoraphobia: August 27, 2012 (T. 367), September 4, 2012 (T. 366), October 8, 2012 (T. 365), November 5, 2012 (T. 364), December 10, 2012 (T. 363), January 7, 2013 (T. 362), March 5, 2013 (T. 410), April 2, 2013 (T. 409). The record did not contain evidence that Plaintiff was admitted to a hospital or that she lived in a halfway house, or a board or care facility. The record further failed to provide evidence that Plaintiff's home equated a structured setting. Plaintiff apparently moved twice during the application and hearing process and corresponding medical records do not indicate that Plaintiff decompensated during her moves or reported increased anxiety surrounding these events. (T. 98, 99.) Dr. Omidian's notations indicated that moving might "help the situation." (T. 365.)

Listing 12.06(C) requires a "*complete inability* to function independently outside the area of one's home." 20 C.F.R. Pt. 404, Subpt. 1, App. 1, § 12.06(C) (emphasis added). "The paragraph C criterion of 12.06 reflects the uniqueness of agoraphobia, an anxiety disorder manifested by an overwhelming fear of leaving the home." *Id.*, § 12.00(F). Plaintiff argues that the ALJ's conclusion that the "sum of the record" suggested that Plaintiff's symptoms would not meet Listing 12.06 was not sufficient.

(Dkt. No. 13 at 19 [Pl.'s Mem. of Law].) "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)). Here, the ALJ's decision clearly indicated his rationale surrounding his determination that the medical evidence in the record did not support a finding that Plaintiff was completely unable to function outside her home.

The ALJ's step three analysis addressed Plaintiff's functioning regarding her activities of daily living; her social functioning; her concentration, persistence or pace; and any record of episodes of decompensation. (T. 22, 27.) Although Plaintiff testified that she experiences anxiety when she leaves her home, the evidence did not support a finding that Plaintiff had a "complete inability" to function outside her home as required by the Listing. As stated herein, Plaintiff testified that she was able to leave her home to grocery shop, she was able to visit family outside of her home, and she was able to attend medical appointments. Further, Dr. Omidian's notations, as outlined above, typically noted Plaintiff did not suffer from agoraphobia.

The ALJ discussed the medical evidence in more detail elsewhere in his discussion and provided an accurate synopsis of that evidence. (T. 25-27.) Therefore, although the ALJ may not have provided a detailed discussion of the evidence in the record specifically in his discussion of Listing 12.06(C), the ALJ's rational was clear based on his overall decision and the evidence of the record.

Any error the ALJ may have made in failing to specifically discuss Listing 12.04 was harmless because the criteria outlined in 12.04(B) is identical to the paragraph (B) criteria of Listing 12.02 and 12.04 and the criteria in 12.04(C) is identical to the (C) criteria of 12.02(C). Therefore, because the ALJ's determination that the record did not support a finding that Plaintiff met the paragraph (B) and (C) criteria of Listings 12.02 and 12.06, the same reasoning, when applied to Listing 12.04, would reach the result that Plaintiff did not meet Listing 12.04.

Any error the ALJ may have made in failing to specifically discuss Listing 12.08 was harmless error because, even assuming Plaintiff met the paragraph A criteria, Plaintiff did not meet the paragraph B criteria of 12.08 which is identical to the paragraph B criteria of 12.02, 12.04, and 12.06. 20 C.F.R. Pt. 404, Subpt. 1 App. 1, Sec. 12.02, 12.04, 12.06, 12.08. Again, Dr. Omidian opined that Plaintiff had a marked limitations in only one of the paragraph B functional areas. (T. 380.) Listing 12.08 does not have paragraph C criteria.

The ALJ's step three determination was supported by substantial evidence. Although Dr. Omidian's check the box form indicated Plaintiff's mental impairments met a Listing, substantial evidence in the record supported the ALJ's step three determination and treatment of Dr. Omidian's opinion that Plaintiff met a Listing. Therefore, for the reasons stated herein, and further outlined in Defendant's brief, this court recommends that the ALJ's step three determination be upheld.

**B.     Dr. Omidian**

It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. *Greek,* 802 F.3d at 375. But a

treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record.  *Id.*; 20 C.F.R. § 416.927(c)(2) (The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record").

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. § 416.927(c)(2)(i)-(iv).  The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion.  *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

The ALJ did not err in affording Dr. Omidian's opinion less than controlling weight.  The ALJ afforded Dr. Omidian's opinions "limited weight" because the opinions were inconsistent with his own treatment notations, were inconsistent with other mental status examinations in the record, and Dr. Omidian treated Plaintiff for less than one year.  (T. 27.)  Plaintiff provides numerous arguments why the ALJ's treatment of Dr. Omidian's opinion was faulty.  Plaintiff argues the ALJ erred in his assessment of Dr. Omidian's opinion because the ALJ's determination was conclusory, the ALJ failed to cite medical evidence to controvert Dr. Omidian's opinion, the ALJ failed to provide

"good reason" for his determination, and the ALJ failed to discuss Dr. Omidian's findings.  (Dkt. No. 13 12-20 [Pl.'s Mem. of Law].)

Dr. Omidian completed a medical source statement dated April 2, 2013.  (T. 373.)  He opined Plaintiff had moderate limitations in her ability to: understand and remember simple instructions; carry out simple instructions; and make judgments on simple work-related decision.  (T. 374.)[5]  He opined that Plaintiff had marked limitations in her ability to: understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decision.  (*Id.*)  Dr. Omidian opined that Plaintiff had marked limitations in her ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting.  (T. 375.)

The ALJ afforded Dr. Omidian's opinions "limited weight."  (T. 27.)  The ALJ reasoned that Dr. Omidian's opinions were inconsistent with his own treatment notations in which he indicated Plaintiff was not markedly depressed, anxious, or agitated.  (*Id.*)  The ALJ also reasoned that Dr. Omidian's opinions were inconsistent with normal mental status examinations.  (*Id.*)  Lastly, the ALJ reasoned that Dr. Omidian had been treating Plaintiff for less than a year.  (*Id.*)

Contrary to Plaintiff's initial argument, the ALJ discussed Dr. Omidian's findings. (Dkt. No. 13 at 19 [Pl.'s Mem. of Law].)  The ALJ referred to Dr. Omidian's medical source statement, contained in Exhibit 11F, in his step three discussion.  (T. 23.)  The ALJ also discussed Dr. Omidian's medical source statements and records at step four. (T. 27.)  Therefore, although the ALJ did not specifically reiterate Dr. Omidian's opinion

---

[5]        The form defined "moderate" as "more than a slight limitations in this area, but the individual is still able to function satisfactorily."  (T. 374.)  The form defined "marked" as a "serious limitations. . . [t]here is a substantial loss in the ability to effectively function."  (*Id.*)

in his decision, the ALJ was clearly aware of his findings and provided reasoning for the weight he afforded his findings.

The ALJ properly afforded Dr. Omidian's opinion limited weight. First, the ALJ relied on the inconsistency between the doctor's medical source statement and his objective observations during treatment session. (T. 27.) An ALJ may rely on objective mental status examination reports in affording weight to medical opinions and formulating his RFC determination. *Suarez v. Colvin*, 102 F. Supp. 3d 552, 574-75 (S.D.N.Y. 2015) (ALJ properly observe that the mental consultative examination reports for plaintiff contain largely normal mental status examination findings); *Stottlar v. Colvin*, No. 5:13-CV-00047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) (ALJ properly afforded opinion that plaintiff "may have" difficulty understanding instructions and "may have" difficulty interacting appropriately with others little weight where mental status examinations revealed plaintiff's attention and concentration were intact, and plaintiff was cooperative, her manner of relating, social skills, and overall presentation were adequate).

Here, results from various mental status examinations did not support the extreme limitations imposed by Dr. Omidian. To be sure, sporadic notations of Plaintiff doing well would not necessarily be inconsistent with Dr. Omidian's findings; however, Plaintiff's mental status examination were consistently normal. Dr. Omidian treated Plaintiff on April 2, 2013, the same day he completed the medical source statement. (T. 409.) Dr. Omidian noted on examination that Plaintiff was "very pleasant" and "not markedly depressed, anxious, or agitated." (*Id.*) Therefore, the ALJ properly concluded

that Dr. Omidian's notations during his treatment session were inconsistent with his extreme limitations outlined in his medical source statement.

The ALJ also properly concluded that other mental status examination in the record were inconsistent with Dr. Omidian's observations. On July 3, 2010, Plaintiff involuntarily sought emergency room treatment for a psychiatric evaluation. (T. 242.) Plaintiff was intoxicated at the time and noted to be anxious. (*Id.*) On February 14, 2011, Plaintiff sought emergency treatment due to anxiety symptoms related to drinking alcohol. (T. 234.) Plaintiff was noted to be alert and appropriate during the exam. (T. 235.)

Plaintiff began treatment with Dr. Omidian in May of 2012. (T. 370.) Dr. Omidian observed that Plaintiff made poor eye contact, frequently cried, had moderate psychomotor retardation, and no agitation. (*Id.*) He observed that Plaintiff's thought process was "over inclusive," her through content was "moderate preoccupation," and her insight and judgment were fair. (*Id.*) On June 5, 2012, Kumar Bahl, M.D., observed Plaintiff had spontaneous speech, a less dysphoric mood, a normal range affect, a linear thought process, mild preoccupation, no delusions, and her insight and judgment were good. (T. 369.) Plaintiff reported to Dr. Bahl that she was "doing much better" and not crying. (*Id.*) On August 6, 2012, Dr. Omidian noted Plaintiff was "very nice" and under stress due to her fiancé being incarcerated. (T. 368.) Dr. Omidian observed that Plaintiff was not markedly depressed or agitated. (*Id.*) On August 27, 2012, Plaintiff reported that she continued to be panicked and anxious relevant to an "application for social services." (T. 367.) However, Dr. Omidian observed that Plaintiff was not markedly manic or agitated. (*Id.*) On September 4, 2012, Dr. Omidian provided

medical management and Plaintiff reported she still felt depressed and anxious. (T. 366.) On October 8, 2012, Dr. Omidian noted Plaintiff was dealing with some personal issues which were stressful. (T. 365.) On November 5, 2012, Dr. Omidian provided medical management. (T. 364.) On December 10, 2012, Dr. Omidian noted Plaintiff was willing to reduce her Ativan. (T. 363.)

On January 7, 2013, Dr. Omidian met with Plaintiff to reevaluate her condition after her emergency room visit in December. (T. 362.) Dr. Omidian noted Plaintiff was paranoid towards her boyfriend. (*Id.*) On February 4, 2013, Dr. Omidian noted Plaintiff "finally got some relief" when her living situation changed. (T. 361.) He noted Plaintiff was anxious and nervous. (*Id.*) On March 5, 2013, Dr. Omidian observed that Plaintiff was distressed and distraught because she had falsely reported her boyfriend to the police, she suffered a miscarriage, she had been drinking again, and she had financial concerns. (T. 410.) On April 2, 2013, Plaintiff reported to Dr. Omidian that Ativan had been helpful. (T. 409.) Dr. Omidian observed that Plaintiff was not markedly depressed, anxious, or agitated. (*Id.*) Dr. Omidian further noted in his report that he reviewed and discussed the medical source statement with Plaintiff. (*Id.*) Although treatment notations make mention of Plaintiff's anxious state, or Plaintiff's reports of anxiousness, objective observations were generally inconsistent with the extreme limitations Dr. Omidian imposed in his medical source statements; therefore, the ALJ did not err in relying on these inconsistencies in affording limited weight to Dr. Omidian's opinions.

Plaintiff also appears to argue the ALJ erred in failing to provide a function-by-function assessment of Plaintiff's ability to perform work related activities, specifically

regarding her ability to interact with others. (Dkt. No. 13 at 21 [Pl.'s Mem. of Law].) The Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a per se error requiring remand. *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir.2013). The ALJ's decision indicated that he relied on Plaintiff's testimony and the normal mental status examination in determining that Plaintiff could perform work tasks that did not involve more than occasional public contact or occasional interaction with coworkers. (T. 24.) As stated herein, Plaintiff testified that she did not have problems with people in authority (T. 177), was able to socialize with friends and family (T. 43-44, 262), and was cooperative upon examinations (T. 247, 320, 322). Therefore, the ALJ did not commit legal error in failing to perform a function-by-function analysis and substantial evidence supported the ALJ's RFC determination that Plaintiff could occasionally interact with others.

The ALJ properly determined that Dr. Omidian's notations did not support his opinions. Although Dr. Omidian noted Plaintiff was anxious during some treatment sessions, Dr. Omidian often noted she was not markedly depressed, anxious or agitated. The ALJ also properly determined that other mental health examination were inconsistent with Dr.Omidian's opinion. Emergency room notations indicating Plaintiff was alert, responsive, without signs of neurological deficit, fully verbal, and cooperative. (T. 237, 247, 252, 256, 260, 264, 267, 270.) The ALJ also relied on observations from Plaintiff's counselor with the Utica City School District. (T. 27.) Further, Plaintiff failed to attend consultative examination with a psychologist and internist on three separate occasions. (T. 308-313.) Therefore, the ALJ based his determination on the evidence

in the record.   For the reasons state herein, and further outlined in Defendant's brief, the ALJ did not err  in his evaluation and weight of the opinion evidence in the record.

### C.    Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms.  *See* 20 C.F.R. § 416.929; SSR 96–7p.  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 416.929(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms;

(3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vii); SSR 96-7p.

Plaintiff argues the ALJ failed to follow the Regulations in assessing Plaintiff's credibility and the ALJ ignored Plaintiff's hearing testimony.  (Dkt. No. 13 at 23-24 [Pl.'s Mem. of Law].)  For the reasons stated herein, and further outlined in Defendant's brief, this court recommends that the ALJ's credibility determination be upheld.

First, the ALJ properly adhered to the Regulations in making his credibility assessment.  Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").  Here, the ALJ summarized Plaintiff's hearing testimony in his decision.  (T. 25.)  The ALJ discussed Plaintiff's activities of daily living based on her hearing testimony and paperwork submitted to Social Security Administration.  (T. 22, 25, 27); 20 C.F.R. § 416.929(c)(3)(i).  The ALJ discussed Plaintiff's medications, treatments, and other measures that Plaintiff used to relieve her symptoms.  (T. 27); 20 C.F.R. § 416.929(c)(3)(iv)-(vi).  The ALJ also noted

that Plaintiff had no work history, even when she was not claiming disability; she exhibited medicine-seeking behavior; she was not compliant with treatment recommendations; and she failed to attend her consultative examinations.  (T. 26); 20 C.F.R. § 416.929(c)(3)(vii).  Therefore, contrary to Plaintiff's argument, the ALJ adhered to the Regulations in making his credibility determination and this court recommends that the ALJ's credibility determination be upheld.

### D.    Step Five Determination

Plaintiff argues that because the ALJ's RFC determination was made in error, the VE testimony cannot provide substantial evidence to support the ALJ's ultimate determination.  (Dkt. No.13 at 24-25 [Pl.'s Mem. of Law].)  Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:        July 6, 2016

William B. Mitchell Carter
U.S. Magistrate Judge